Call the next case Good morning, your honors. May it please the court, my name is Ronald Kraus. I'm an assistant federal public defender with the Middle District of Pennsylvania and I represent the defendant Willie Tyler. I would like to reserve three minutes for rebuttal. Yes, sir. I'd like to start with the most, what I think is the most difficult dispositive issue in this case, which is the weighing of the sufficiency of the evidence concerning the investigation related offenses under the Fowler standard. I think my brief did a disservice to the court because I don't think it fully analyzed the Fowler standard properly as it applies to this case. I would like to expand on that analysis this morning. With the court's permission, although I hesitate to read quotations during argument, with the court's permission I'd like to read three sentences from the Shavers case which I think are very critical to this argument and that discuss Fowler. In Shavers at 378, the court says, The federal prosecution in Fowler arose after Charles Fowler shot a police officer who caught him and his associates suiting up to rob a bank. It was clear that Fowler had shot the officer with the intent to prevent him from speaking to other law enforcement officers, but that he did not have any specific law enforcement officer or set of officers in mind at the time. To satisfy the federal nexus requirement in such a situation, the court held, the government must demonstrate a reasonably likelihood, and you know the rest, of communicating with a federal law enforcement officer. The problem in my brief is that I focus on the entire Fowler standard, but it's not. It's actually the second part of a two-part standard. Fowler is two-part and it's actually the second part, it's actually the second sentence I read that states that first part. And it's that first part, it's a threshold part of the Fowler standard that's critical in this case, not the reasonable likelihood test. Now again, I'll ask your... The second sentence in Shavers states the first threshold part of the Fowler standard. Which is? Which is, with your permission, I'll read that from Fowler. This is from Fowler at 250. What then must the government show to prove that such a defendant, meaning Fowler, who shot the officer, intended to prevent communications to federal officers? First, the relevant question concerns the defendant's intent. The government will already have shown, beyond a reasonable doubt, that the defendant possessed the relevant, broad, indefinite intent. Namely, the intent to prevent the victim from communication with unspecified law enforcement officers. Didn't in Tyler, the second trial in Tyler, and in Bell, on very similar facts, there's already been finding of a sufficiency of evidence on that very point? Well, Bell did address that. I think if you read it, it's a little bit superficial, first of all, as I'll explain further. In Tyler too, though, after Tyler's second trial, the Third Circuit already looked at the sufficiency of the law enforcement conviction. Well, it did, but it didn't do it under the Fowler standard. But you just said that we should look at the very first part of Fowler, and didn't the court's examination of the trial record comport with that very requirement? No. The court in Tyler used the Bell standard. Bell standard is proof that the officers whom the defendant believed the victim might communicate would, in fact, be federal officers. So the emphasis under the Bell standard, is who the victim might communicate with. There's really not much emphasis on what the intent of the defendant was. And what the distinction in Fowler is, and this is what I missed on the first go-around myself. I think I was on the panel in Fowler, 11th Circuit. The 11th Circuit decision in Fowler that got overturned, I think I was on that panel. Oh, okay. Poor guy sitting around a graveyard. Well, in that case, there was no question that when the local sheriff came up to the car, and they were sitting in the cemetery around the car preparing to rob a national bank, that they were shooting this officer with the intent of preventing him from communicating with other law enforcement officers, because that's obviously what another law enforcement officer would do. But that really distinguishes the facts of Fowler from this case. And also the new emphasis in Fowler on the defendant's intent is what's really the difference here. So what Fowler instructs with its threshold standard, is that you have to weigh the sufficiency of the evidence in this case under those two elements. First, that the government proved beyond a reasonable doubt that the defendant, Tyler, possessed a broad indefinite intent to prevent the victim from communicating with law enforcement officers in general. And then show the reasonable likelihood that it would be a federal officer. Was it addressed, I believe, by the district court in this case? It was not addressed by the trial court in this case at any time? Or was it? I'm blanking on that, Your Honor. I am too. I thought you might help. Should that be a jury question, or is that something that we can address on appeal? Well, I think it certainly is a jury question. Is that part of the instructions to the jury? It is. Whether there's a reasonable likelihood that the person who was assaulted or attacked would be a federal officer? Well, there were instructions... I mean, reasonable... Reasonable likelihood. Because that wasn't the standard at the time. It was somewhat similar. I did not really go into that because I think at this point in the litigation, 2241, I don't think jury instructions are something I could attack. It's really a matter of establishing a lack of criminal conduct at this point. But that is the standard on the felon. Yes, it's reasonable likelihood. Is that a jury question, or can we determine that a reasonable juror could determine that there was a reasonable likelihood? I think that's clearly a jury question. And a jury has not decided that question? No, it hasn't. Not under that standard. But I would submit that this case really doesn't even get to the reasonable likelihood standard because it doesn't pass the threshold of an inference of a reasonable doubt that Tyler intended to stop Proctor from communicating with a law enforcement officer. Let's go back to the jury instructions. I understand you can't attack them. But one of the instructions the district court gave to the jury was that the acts, either the physical force or the killing, was motivated by a desire to prevent the victim from communicating with law enforcement. So the jury was already told that had to be the motivation for the action, and therefore this jury happened to have been instructed on the very point that you say was the first part of the Fowler analysis, right? So that really isn't anything we need to be concerned about. Well, I don't think it was emphasized in the same way as it was emphasized in Fowler in terms of his intent to speak in any general, broad, indefinite sense. Certainly Fowler wasn't the law of the land at that point, and so there wasn't a focus on it. I was looking at the Fowler opinion, and Justice Breyer wrote the opinion. He said, and the question that concerned the court according to Justice Breyer is, the question before us concerns what, if anything, the government must show beyond this broad, indefinite intent in order to show that the defendant weren't particularly intended to prevent communication with federal officers. What beyond this broad, indefinite intent? So intent was not really what they were focusing on. It's what beyond intent, and then he goes and says, we hold that in such circumstances the government must show that there was a reasonable likelihood that a relevant communication would have been made to a federal officer. So it's that second part there. I'll respectfully disagree, Your Honor. The language that Fowler starts off with says, first, the relevant question concerns the defendant's intent, and then talks about how the government has to show beyond a reasonable doubt that the defendant possessed a relevant, broad, indefinite intent to prevent the victim from speaking to law enforcement officers. If you go immediately to the reasonable likelihood, so I think I put this in my brief, you're putting the rabbit in the hat already. What Fowler did was take the rabbit out of the hat and make the government prove that there was, first, the broad, indefinite intent to prevent communication with law enforcement. Wasn't that already shown in prior proceedings in this case? I don't believe so, Your Honor. As an example, let's look at three very bad facts that were in the government's case, bad facts against Tyler. Look at them in the light most favorable to the government, and they were all mentioned in the government's closing. For example, on April 20, 1991, which was the day before David Tyler's trial, the day of the killing, the whole Tyler crew gathered at Mary Hodges' house. Wanda Campbell testified at the trial that David Tyler had a shotgun. He asked Willie to show him how to cock it, and Willie showed him. Now that testimony clearly supports the inference that Tyler acted with an intent to stop Proctor from testifying at state trial, but it says nothing about whether or not he had an intent to prevent her from speaking to law enforcement in general. During that same gathering, Wanda Campbell testified, David Tyler said, pardon my language, the bitch has to die tonight, the bitch shouldn't have told on me. Again, testimony, certainly a jury could use that to infer that Willie Tyler wanted to prevent Proctor from testifying at trial, but it says nothing about preventing her from communicating with a law enforcement officer. Then a few days later, after the death, Laura Barrett testified that she overheard a conversation between Roberta Bell and Tyler, and Tyler says keep your mouth shut because you don't know who's listening. Again, inference that he intended to kill, prevent Proctor from testifying at state court trial, but it says nothing about preventing her from speaking to law enforcement officers. But the entire record demonstrates that there was, and that apparently these folks knew that she had begun to cooperate with law enforcement. I don't think there's any evidence in the record that Tyler knew what was going on. He had no idea. The circuit has already found that there was sufficient evidence that there was communication with law enforcement that would have been federal had she survived to communicate it. I think that's already been found, and in any event on 2241, we have to find no reasonable juror would have concluded the way that you say it should not. But again, I think when you read that closely, what they were looking at was the threshold question of broad indefinite intent to look at a law enforcement officer. This isn't a case where Tyler saw Proctor talking to a detective on the street and said I've got to stop her from talking to law enforcement. It wasn't a case where she went into, they saw her going into police headquarters, and they said we've got to stop her from talking to law enforcement. It wasn't a case where someone told them she's snitching on you, and they decided well we have to stop her from talking to law enforcement. They had no idea she was talking to law enforcement. She had already testified. If we should happen to agree with you on either the Arthur Anderson claim or the Fowler claim, then the issue remains is there an adequate showing of actual innocence? And should we remand to the district court to determine whether there was an actual showing, whether there was a sufficient showing of actual innocence, and if so, what is the standard? Well, I think the court under 2243, it says the court shall hear and determine the facts and dispose of the matters law and justice requires. I think you have the discretion to decide that here. If you wanted to remand it to the district court, obviously that's something you could do. Yes. Yes. The district court said I don't have jurisdiction. If we should say yes, you did have jurisdiction on the face of the complaint pursuant to the Arthur Anderson ruling and the Fowler ruling, should we then send it back to the district court to make a factual determination that there is actual innocence, and if we do, what is the standard? We should tell the district court to follow. I'm not sure I understand what you mean by the standard. Well, what is actual innocence? There are related arguments about actual innocence in habeas, and there is the... I'm sorry, there is a standard which we have used in related habeas petitions to determine if there is actual innocence. Should we refer to that in instructing the district court? Well, I think the actual innocence would be that he did not violate the witness tampering statutes. But that requires some factual determination, and the facts of the case really haven't come before us as to what was the intention, what could the jury have decided. It would appear to me, and I'm not saying that it would appear to my colleagues, but that there are some factual determinations that still need to be made under the Arthur Anderson and the Fowler standards to determine if there is actual innocence because the law has been changed, and what was shown did not create a violation under that law, and what are the... What guidance should we give to the district court? We'd certainly be agreeable to sending it back to the district court, and I think the guidance would be to follow the standards under Arthur Anderson and Fowler. And I don't disagree with Judge Roth's point, but I'm wondering if this is a jury issue or if this is a judge issue. For the district court? I mean, what's your position? We're talking about making factual determinations with respect to likelihood of communicating with federal officers and things like that. It seems like a factual issue to me, Your Honor. Okay, we'll kick it around, I guess. We'll get you back on rebuttal. Mr. Zubrod? Thank you, Judge Fuentes. May it please the Court, my name is Gordon Zubrod. I'm an assistant United States attorney. I represent the appellee in this case, the United States of America. If the Court will just tolerate me for a moment to state what I think is the core issue that disposes of this matter, I'd suggest to the Court that we begin with the fact that this Court has already found that the facts of this case were sufficient under law to establish a nexus for a law enforcement connection under the law enforcement communication to a law enforcement officer prong. In the Bell case, the Court said that the facts met the legal... Was that before Fowler? Yes, sir, it was before Fowler. But it said it met the legal and factual requirements and statutory requirements to establish the federal nexus. If you find that the law enforcement prong has been satisfied, since this was a general verdict under the United States v. Griffin case, the Supreme Court case, that means that if one object of the statute that is being charged, if they charge multiple objects, if there's a general verdict, then if one prong or object of a charge is legally sufficient, you can ignore the other ones. And we stand on the fact that under Fowler, the law enforcement prong was met because the Bell was met. I couldn't help focusing on Proctor's testimony at Hodge's trial in January 1992. She was unwilling to cooperate anymore. I've heard Detective Fonz's or Fonz's testimony on multiple occasions that there were no plans at all to use Proctor to testify in any federal proceeding. So how do you find a nexus? Well, the nexus is when you look at the testimony of Proctor and of Fonz at the preliminary hearing in the state court, and you look at Fonz's testimony at the federal court, what Proctor was saying was, I'm not doing any undercover work anymore. I'm no longer working. But it was clear from Detective Fonz's testimony that it wasn't his call where it went from there. He was part of the federal joint task force. So the best testimony is that there were no plans at all to use Proctor to testify in any proceeding? Well, if you look at page 338 of the testimony, Detective Fonz says basically, in fact, Detective Fonz says that he said the next step would have been to evaluate the information that Proctor had provided in order to see if further investigation was warranted. It was the duty of the task force coordinator, Agent Diller, to make that determination. Well, from that, I would conclude that maybe Proctor's work might have been communicated to federal officials, possibly, perhaps. But that's contrary to the Fowler case. Your Honor, it was communicated to the federal officials because Agent Diller was the representative and the advisor and counselor of the federal government, and he had interviewed her prior to her being murdered. And he had said that she had told him about multi-jurisdictional involvement of this drug organization and that he had arranged that he was going to meet with her and debrief her. Fonz, when he was asked, what information did she tell you about multi-jurisdictional activity, he said they traveled to New York and traveled to Jamaica to set up drug transactions. So you have not only multi-jurisdictional, you have multi-state and multi-national. Detective Diller, or Agent Diller, said, I would have communicated that. After my interview, following up on my follow-up interview, I would have communicated that to the DEA. DEA took the stand and said, we absolutely would have taken this case and she would have been a witness and we would have taken on this investigation. So you're saying, based upon that proper set of facts from this trial record, the trial record not only substantiated the conviction as already found to be sufficient as a matter of evidence in Tyler, the second trial, the second trial in appeal, but also under Fowler. You're saying there's enough evidence here that the court could find that it would meet the Fowler test too, because there was not just a reasonable likelihood, but a very strong likelihood. Yes, and remember, I do, Judge Schwartz, but remember that the Fowler said that when you talk about reasonable likelihood, it's not beyond a reasonable doubt. It's not even more likely than not. It is more than remote or hypothetical. And when you have, as they found in the Bell case, they said she was already communicating with law enforcement officials in a partially federal drug task force. It was reasonable to assume, based upon the testimony, that she was going to continue communicating with law enforcement officials. The federal law enforcement officials said he had already set up to meet with her. And it said that a jury could have reasonably inferred that at least one of those communications would have been to a federal official. And Diller says, I'm the guy. Are you conceding the Arthur Anderson prong? I'm sorry, do I see? Are you conceding? Well, I would have to say, Judge, that the official proceeding prong of the indictment is our weaker argument. But the Arthur Anderson case does not apply to Todd. It doesn't apply first because it referred to official proceedings, and we're going into the law enforcement prong. As the district court found, citing cases from the 6th and 11th Circuit, that Arthur Anderson could never apply, does not apply to law enforcement prong. But even more importantly, Arthur Anderson can never apply to tampering with a witness by murder. Because Arthur Anderson was concerned, how does the defendant know that what he's doing is wrong under Arthur Anderson? Well, the official proceeding, it has to be a federal official proceeding, right? Under Arthur Anderson, if it's per se legal activities, it has to be in contemplation of... I'm talking about the language of the statute. Your proceeding must be a federal proceeding. Yes. Official proceeding. Yes. And there's no official federal proceeding that was extant or conceived of at the time that the murder of Ms. Proctor occurred, right? That's correct. So are you conceding that prong of the... Well, we're certainly hanging our spurs on the law enforcement prong. I would say that that is our weaker one. Actually, the piece of evidence was the DEA agent said not only would she have been part of our investigation, we would have used her as a witness. Didn't it matter that she said she was just not going to cooperate anymore and said so at the Hodge trial? She said in the Hodge trial that she had been burned as an informant. She was no longer to be working as an informant. And frankly, it's not her call. But it was understood...  I'm done. Well, we don't judge the presence of a potential communication with a law enforcement official by the decedents. It is was the evidence, was it likely that there was sufficient evidence shown that she was going to be communicating with someone. But that's an investigative prong rather than the official proceeding prong, right? That's correct, Judge. And she could have said, I'm not going to talk to you anymore when the federal law enforcement officer came to her. She's still communicating with a federal law enforcement officer. I just want to go back to you. I think you were about ready to say something about Bell and the court in Bell acknowledging that there did not appear to be sufficient evidence of an official proceeding. Yes. Did you say that? Yes, Your Honor, I did say that. So from your point of view, Arthur Anderson really doesn't change that at all, that the state of the evidence is what it is. And whether it was an official proceeding as defined by Arthur Anderson or an official proceeding as applied by Bell, it doesn't matter. The state of the evidence remains the same. The state of the evidence points to the law enforcement communication prong. And that's where we stand. And I would emphasize to the court as well that we're looking at this under the 2241 standard. One of three things has to be established by the defense to carry the day in this. One, actual innocence. Two, the statute was decriminalized or the conduct was decriminalized. Under the law enforcement standard, it wasn't because as the defense conceded before you, as my colleague conceded before you, he did commit the murder. There's plenty of evidence to show that he put the gun to her head and killed her. And three. Well, he was acquitted of homicide, right? No, he was convicted of homicide, tampering by homicide in the federal court. Yeah, in the state court he was acquitted of homicide. He was acquitted under the state law of conspiring to commit homicide. The third that the defense has to carry is that no reasonable juror, not a single reasonable juror, could have found that the evidence was sufficient to convict beyond a reasonable doubt. None of those things have been shown in this case. Judge Roth asked your colleague about remand. Do you think that's necessary? And if not, why not? I do not. First of all, the district court addressed Fowler and addressed Arthur Anderson and said under both of those, first of all, Arthur Anderson doesn't apply, but Fowler, the reasonable likelihood, when you look at all of the evidence, and there were, I think, nine key points cited by the court, when you look at all of the evidence, there was a reasonable likelihood that she would have communicated at least once with a federal law enforcement officer, that is, Agent Diller, who met the standard under 1512. She would have. She did not, though, communicate with any federal officer. She did communicate, Your Honor. She communicated with Agent Diller. Agent Diller was... Was Diller a federal official? Under the statute, he was. Well, he was a state law enforcement officer who was part of the committee and had an official position with the committee, right? Well, here's what the statute says. The term law enforcement officer means an officer employee of the federal government or a person authorized to act for or on behalf of the federal government or serving the federal government as an advisor or a consultant. Both the head of the Pennsylvania Bureau of Narcotics investigation for the Pennsylvania Attorney General's Office and the representative of DEA testify, this was our advisor, this was our consultant. He decided what cases went federally. As a matter of fact, Diller testified that he was the case agent in the federal trials. I tried cases with Mr. Diller before he retired. He was a federal agent under the statute as the advisor, consultant, and DEA, when, for instance, he makes the decision as to whether or not we take the case for federal prosecution. So the answer is yes. And Diller said, I interviewed her beforehand, and she told me of multi-jurisdictional involvement, and I intended, and Phones confirms that, I intended to interview her after her testimony when they had finished the state case, the local case, to discuss with her the other involvement. And that involvement was not just multi-jurisdictional. It was multi-state, and it was multi-national. Now, the actual innocence, the case that I, Bowsley is the case. Bowsley. Which, if we should decide that it should be remanded, and question determination made by the District Court of actual innocence, is the Bowsley standard the one we should use? Is that relevant? I believe the Bowsley standard is relevant, Your Honor. When we come to actual innocence, though, remember that the court is not to consider jury instructions or anything else. It is actual innocence. And when the representative of the defendant, the appellant, stands before you and acknowledges that the evidence was sufficient on murder, then it is to look at all of the evidence for this court to consider all of the evidence of the case, as the District Court did below, and say, based upon all of the evidence, there was a reasonable likelihood that at least one communication with a federal law enforcement officer would have occurred had she not been murdered. And one of the reasons he said that in the Bell case, they pointed out, and the court followed up on Bell, when you, these people were well aware that their involvement went far beyond Carlisle, where the prosecution was taking place for sales that took place within Cumberland County. They were well aware that it went far beyond that. It went beyond the bounds of the jurisdiction. It went beyond the bounds of the state. It went beyond the bounds of the United States. They were aware that if she continued to cooperate or communicate with law enforcement, that would come out. And the court said that there was plenty of evidence in there in Bell that there was going, that it was a partially federal law enforcement task force that was involved. And if she had done any more communication with them, the reasonable likelihood is that at least one of those communications would be with a federal law enforcement officer. And Fone said, it had already been planned that I was going to turn the case over to Detective Diller and he would continue the interview. And Diller had already begun the interview before she had been killed. That's, you have to find that no reasonable juror could have found that evidence was sufficient beyond a reasonable doubt on those facts. And we submit that the evidence is there and that there is no clear error in terms of that. Those were reasonable inferences from the jury. And therefore, since none of the prongs of 2241 have been met, we ask the court to uphold this. Thank you. Thank you, Mr. Zubrod. Mr. Krauss. Well, first, addressing Mr. Diller's status as a federal agent, it's significant if you go back, this case, as you well know, has a history way back into the 90s. And Mr. Diller testified numerous times. It was only in the last trial where all of a sudden Mr. Diller decides that he is an advisor and consultant with the federal government. And when asked where he got that phrase, I believe he says something like, well, I think I got it off of someone's affidavit or someone else's memorandum. It was clear that this was manufactured solely for the purpose of tracking the statute. Was he a member of a task force? He was a member of the task force. But in 1992, there were no federal members of that tri-county task force at that time. Was it a joint federal state task force at the time or what? Well, my understanding was that it was a tri-county task force. The roster is part of the appendix. You'll see no federal names in it. You'll see no federal agencies in it. The testimony of Cagliano says there was no federal involvement in it. Basically what it was was Mr. Diller, who was sort of the liaison with DEA and other federal agencies, he had their phone number on his Rolodex. That was basically his connection to the federal government. And when occasionally a case that he thought might introduce the federal government would come up, he'd call them up and then they would think about it. But one of the things that's significant in this case is Diller supposedly had this conversation with Ms. Proctor, where they got into Harrisburg as this great hub of international drug smuggling and going to Jamaica. And yet he didn't do anything about it. This was January 1991. He didn't do anything about it. He didn't call up the DEA. He didn't call up Mr. Zubrod and tell him, hey, I have somebody here. I think there's a multi-jurisdictional issue. They say they were going to wait for the state court proceedings to end. Does that make any sense? If there was some matter that the federal government would be interested in, the federal government would step in, the state would null the prosecution, Mr. Zubrod would step in and he'd take over and he would have gotten the convictions. The idea that this was any really federal interest doesn't come up, and it never came up until after Bell was acquitted. Let me ask you a question. Mr. Zubrod talked about this being a general verdict, and therefore if any charge is valid, that's the end of the case. Do you agree with that? I don't see how that could be. I think there has to be guilt on each of the charges and each of the elements of the charges. I don't understand. We certainly have to see what the verdict slip looked like. Is that in the appendix? It's not, and actually we looked for it and couldn't find it. So what we have about the verdict, though, is in the section of the jury charges, the reading back by the foreperson. It might be there. But still, it seems to me that we have to have guilt on each element of the charge. Mr. Cross, thank you very much. Thank you. Thank you for your excellent arguments. Thank you. And please, the Court, I have the jury verdict here, the verdict slip here, which we turned over, we found it last week, and we turned it over to the defense. If the Court would like it, we would turn it over to the clerk. Give it to the clerk and we'll take a look at it. Yes, that's fine. And we are citing for our position, United States v. Scrippin, on general arrest. Okay. Thank you, Mr. Zubrow. Thank you. Thank you. We'll adjourn.